**Jack McLAIN, Appellant,**

v.

**A. D. HODGE, Individually, and d/b/a Buck-horn Trading Post, Appellee.**

**No. 5075.**

Court of Civil Appeals of Texas, Waco.

Dec. 9, 1971.

Rehearing Denied Jan. 6, 1972.

Wilson, Berry & Jorgenson, Ken Fuqua, Dallas, for appellant.

Tucker, Gano, Alexander & Cochran, Wm. F. Tucker, Dallas, for appellee.

HALL, Justice.

In November, 1967, plaintiff-appellant, Jack McLain, purchased a Model 49 Ithaca single-shot, lever-action, .22 caliber rifle from defendant-appellee, A. D. Hodge, who was and is a retailer of new and used guns in Dallas, Texas. On Christmas day, 1968, plaintiff was loading the rifle when the cartridge fired and caused a part of the shell casing to enter his right eye. As

a result of the injury, plaintiff permanently lost the vision of the eye. He brought this action for his damages on the theories of strict liability, negligence, and fraud. At the close of plaintiff's proof, on motion of the defendant, the court withdrew the case from the jury and rendered judgment that plaintiff take nothing. We reverse and remand.

Plaintiff attacks the trial court's summary ruling and asserts (1) that the record supports his strict products liability theory because the evidence is legally sufficient to establish that the rifle was defective when the defendant sold it new, and that the same defect existed at the time of the accident in question and was a proximate cause of his injuries; and (2) that there is legally sufficient evidence in the record to show that the defendant was guilty of the following negligent acts, among others alleged, which proximately caused plaintiff's injuries: failure to make a reasonable inspection or test of the gun before selling it to plaintiff.

If, contrary to plaintiff's contention, there is no probative evidence in the record that supports a theory of recovery pleaded by him, then the case was properly withdrawn from the jury. Otherwise, the trial court's ruling was incorrect.

The rules by which we must determine whether the trial court's action was proper are well settled. They require us to accept as true any legally competent evidence in the record that supports plaintiff's case; to resolve in plaintiff's favor all conflicts and inconsistencies in the evidence; to interpret the evidence and all reasonable inferences to be drawn therefrom in plaintiff's favor; and to disregard the evidence and inferences that are favorable to defendant. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S. W.2d 60, 61 (1953); Anderson v. Moore, (Tex.Sup.1969) 448 S.W.2d 105.

In the beginning, we should note that a question is raised by plaintiff as to whether the gun was new or used when it was purchased by him. Although there is probative evidence (albeit weak) in the record that plaintiff *believed* that he was buying a new rifle, we hold that there is no more than a scintilla of evidence that the gun was new when purchased by plaintiff.

Henry Burns testified that he purchased the rifle in question, "brand new," from defendant in December, 1961, as a gift for his eleven-year-old daughter. Both he and his daughter used the gun. "Within the first year" that he had the gun he learned that if the lever was pushed all the way down the shell ejector would be out "about a quarter of an inch from the breech and it would be difficult to put a cartridge in." At least three times during his ownership a shell got in front of the ejector and, after firing, he used a straightened coat hanger as a "ramrod" to remove the empty casings from the rifle. He did not recognize this condition as a defect, but simply assumed "that was the way the gun was made." He learned to avoid loading the gun with the ejector behind the cartridge by pulling the lever "back a little bit for the ejector to go up against the breech before you load it." He sold the rifle back to the defendant on October 4, 1967.

Plaintiff stated that he purchased the rifle as a gift for his 14-year-old stepson. Plaintiff never fired the gun until the day of his injury, at which time he was correcting the sights on the gun for his stepson. He fired the gun twice, aiming at a can. He was preparing the gun for a third shot and was raising the lever when a premature firing occurred that caused his injury. Plaintiff had no knowledge of any defect in the gun prior to the accident.

Johnny Otts, witness for plaintiff, is the manager of the gun repair shop of another company in Dallas that sells new and used guns at retail. Mr. Otts had served in that capacity for 27 years at the time of trial. The defendant stipulated that the witness was qualified to testify as an expert on guns. Mr. Otts testified to his examina-

tion and testing of the gun in question and of comparing it with another gun of the same make and model that was in good working condition. He stated that the ejectors on both guns were of the same size; that when the lever on the gun is down and the breech is open for loading that the ejector on the questioned gun extends back into the chamber behind the face of the barrel two sixty-fourths of an inch further than it should; that this "difference in clearance * * * wouldn't be obvious to the naked eye" unless the gun was being compared with another gun that was in proper condition; that this is a malfunction and can permit a cartridge during loading to slip past the ejector; that this condition rendered the gun defective and unsafe for anyone who had no knowledge that a shell could slip past the ejector; that all .22 cartridges are "rimfire," that is, that the primer for their firing is in the rim of the cartridge; that when a shell has slipped past the ejector, "then the lips of the ejector will press against the rear portion of the case and whenever the bolt was closed it would leave an impression or indentation on it which could cause it to fire" before the breech was closed. He expressed the opinion that the cause of plaintiff's injury was "that the cartridge was past the lip of the ejector and when the breech was starting to be closed that (the ejector) hit or compressed the primer and that it fired the gun"; that the firing occurred prematurely before the lever was completely up and, thus, before the breech was completely closed; and that this permitted the shell casing to escape the chamber and strike plaintiff's eye.

After the rifle in question left the Ithaca factory, it was owned only by the defendant, and the plaintiff and his stepson, and Mr. Burns and his daughter. Mr. Burns testified that during the six years of ownership by him and his daughter he had possession of, or at least knew the whereabouts of, the gun at all times and that it was not repaired during that time. The defendant stated that the gun was not repaired while he had it. The plaintiff and his stepson testified that they never repaired the gun or had it repaired, that each was in the other's presence at all times during their use of the gun, that they never abused the gun, and that the gun was stored in a gun rack over plaintiff's bed at all times when not in use.

In our opinion, plaintiff established a case of strict liability in tort. The record contains probative evidence that the ejector on the rifle in question was defective when the gun was sold new by the defendant to Burns in 1961; that this same defect existed at the time of plaintiff's injury; and that the defect was a proximate cause of the injury.

Section 402A of the Restatement of Torts, Second Edition, reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

This section states the law as followed in Texas, and is applicable not only to foodstuffs but also to defective products which cause physical harm to persons. McKisson v. Sales Affiliates, Inc., (Tex. Sup., 1967) 416 S.W.2d 787, 789.

The lapse of time between 1961 and 1968 without injury to any user of the gun is but one factor among many in considering whether the rifle was defective when sold new, and whether the defect caused plaintiff's injury, and does not, per se, defeat plaintiff's cause of action. See International Derrick & Equipment Co. v. Croix, 241 F.2d 216, 221 (5th Cir., 1957); Pryor v. Lee C. Moore, Corporation, 262 F.2d 673, 675 (10th Cir., 1959); Burns v. Pennsylvania Rubber & Supply Co., (1961) 117 Ohio App. 12, 189 N.E.2d 645.

The defendant argues that, in any event, the judgment is correct because "plaintiff failed to plead and prove the essential requirement of notice (set forth in Section 2.607(c) (1), Bus. & C., Vernon's Texas Codes Annotated) in order to permit submission of strict liability"; and "because the evidence uncontrovertedly establishes that there was an express oral warranty (of "satisfaction guaranteed") which modified any statutory or implied warranty"; and "for the reason that no warranty of fitness for a particular purpose attached to the product because plaintiff did not rely on the expertise of the seller."

These arguments are answered unfavorably to defendant in Comment (m) under Section 402A of the Restatement of Torts, wherein it is said:

"The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill or judgment of the seller who is to be held liable * * * and it is not affected by limitations on the scope and content of warranties * * *. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs [as is provided by the Uniform Sales Act or the Uniform Commercial Code]."

We are also convinced that plaintiff made out a case of negligence against defendant.

Defendant, and his wife and son who aid him in the operation of his business, could not recall the particular examination made by them of the rifle when it was purchased from Burns. However, they gave testimony that the usual test and examination they make of a used gun before resale is to look down the barrel, look for cracks in the stock, and "maybe put a shell in it and extract it." They do not fire a used gun before resale, nor do they send it to a gunsmith for inspection; and, by their own admissions, none of the three are gun experts. Their custom is to place a used gun on a rack for sale after a rather cursory examination, sell it to a customer, and tell him to bring it back if it does not function properly or if he is dissatisfied.

The witness Otts testified that the used guns purchased by his employer were brought to him for examination and testing before resale. He said that "we inspect the gun for safe operation * * * to see if the safety features are working properly, and check for obstructions in the barrel, any sights loose or anything that might be missing from the gun, * * * and clean it up, and also test fire it, and generally see if the gun is in safe working condition."

This testimony of Mr. Otts was offered by plaintiff "to show what the custom of reasonable inspection would have been of this gun prior to sale"; but defendant's objection to the testimony was sustained.

The evidence was improperly excluded. The rule for its admission is stated in 2 McCormick & Ray Texas Law Of Evidence 376, Sec. 1527 (2d ed. 1956), as follows:

"On the issue of a person's negligence, i. e. whether he acted as a reasonably prudent person would have under the circumstances, the customary conduct of other persons generally in a similar situation or business is relevant and admissible. * * * The courts are quick to point out, however, that such conduct, usages or customs of others are not con-

trolling and must not be taken as the legal standard of care or negligence, but are merely evidence to be considered along with other circumstances in determining what the ordinary reasonable man would do under the circumstances."

We believe the excluded evidence, when properly considered along with defendant's testimony as to the examination customarily made by him of used guns he offers for sale, is sufficient to present the questions of whether defendant failed to make a reasonable inspection or test of the six-year-old used rifle before it was sold to plaintiff, by failing to thoroughly examine and test fire the gun or have it examined and tested by a qualified gun expert.

We reverse the judgment of the trial court and remand the cause for trial.