In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-251 CV


 ______________________


 

K-2, INC., Appellant



V.



FRESH COAT, INC., Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-09-5961 CV 






OPINION


 The trial court signed a judgment based on a jury verdict in favor of Fresh Coat, Inc.
against K-2, Inc. (a/k/a Finestone) under the Products Liability Act. See Tex. Civ. Prac. &
Rem. Code Ann. §§ 82.001-.008 (Vernon 2005 & Supp. 2007). A builder, Life Forms
Homes, Inc., had contracted with Fresh Coat for Fresh Coat's installation of Finestone's
synthetic stucco cladding (EIFS) (1) on houses. The homeowners complained of water
penetration in the EIFS that led to "excessively high moisture levels in the cladding and
structural damage from rot and termite infestation." The homeowners also alleged mold
contamination and personal injuries from exposure to mold. After settlements of the claims
made by the homeowners and the homebuilder, Fresh Coat obtained a judgment requiring
indemnification of its loss by the manufacturer Finestone. 

 We conclude the payment made by Fresh Coat to the builder Life Forms as a result
of a contractual obligation is not recoverable from Finestone. Finestone's issues concerning
Fresh Coat's payments made to the homeowners, and concerning attorney fees, costs and
interest, are overruled. We therefore modify the judgment to delete the amount of the
payment to Life Forms, and affirm the judgment as modified. 

The Trial Court Proceedings


 The homeowners' lawsuit alleged defects in the EIFS. The petition also asserted
causes of action for negligence, violation of the Deceptive Trade Practices Act, negligent
misrepresentation, and breach of warranty. The defendants, including the manufacturer of
the EIFS (Finestone), the homebuilder (Life Forms, Inc.), and a contractor (Fresh Coat, Inc.), 
settled with the homeowners. Fresh Coat settled with Life Forms. Judgment on a jury
verdict was entered against Finestone in favor of Fresh Coat and Life Forms. After the
parties filed briefs in this Court, Finestone settled with Life Forms. (2) 

The Issues


 The remaining dispute in this appeal involves the judgment in favor of Fresh Coat
against Finestone. The jury awarded Fresh Coat $1,036,686.23 in damages for settlement
payments Fresh Coat made to the homeowners; $1,203,995.50 in damages for settlement
payments Fresh Coat made to Life Forms; and $726,642.23 for attorney fees. In arriving at
these sums, the jury answered a predicate question on statutory indemnity under the Products
Liability Act. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a) (Vernon 2005).

 Finestone asserts it is not obligated to indemnify Fresh Coat because the statutory
indemnity provision in Chapter 82 does not apply. Finestone argues that the synthetic-stucco
cladding system is not a product, and the evidence is legally and factually insufficient to
establish Fresh Coat was a seller of a product. Attacking the sufficiency of the evidence,
Finestone also argues that Fresh Coat cannot recover from Finestone the settlement amount
Fresh Coat paid to Life Forms, and that Fresh Coat failed to segregate recoverable attorney
fees from non-recoverable fees. Finally, Finestone attacks the award of costs and the award
of prejudgment interest.

Standards of Review


 The interpretation of a statute is a question of law reviewed de novo. In re Forlenza,
140 S.W.3d 373, 376 (Tex. 2004). 

 When analyzing a legal sufficiency-of-the evidence issue, an appellate court views the
evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable
jurors could, and disregarding contrary evidence unless reasonable jurors could not. City of
Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). A no evidence challenge will be
sustained when:

 (1) the record discloses a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital
fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. 


Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998); Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63
(1960)). "When a party attacks the legal sufficiency of an adverse finding on an issue on
which she has the burden of proof, she must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue." See Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 

 In a factual sufficiency review, a court of appeals considers and weighs all the
evidence, and will set aside the verdict only if the evidence is so weak or the finding is so
against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Id. at 242; Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).


The Statute


 Chapter 82 of the Civil Practice and Remedies Code creates a statutory duty of
indemnification in a products liability suit that "is in addition to any duty to indemnify
established by law, contract, or otherwise." See Tex. Civ. Prac. & Rem. Code Ann. §
82.002(e)(2) (Vernon 2005). Section 82.002 imposes on a product manufacturer the duty to
indemnify a seller "against loss arising out of a products liability action," except when the
manufacturer proves the seller caused the loss and is "independently liable." See Tex. Civ.
Prac. & Rem. Code Ann. § 82.002(a) (Vernon 2005); see also Meritor Auto., Inc. v. Ruan
Leasing Co., 44 S.W.3d 86, 87 (Tex. 2001); Fitzgerald v. Advanced Spine Fixation Sys., Inc.,
996 S.W.2d 864, 867 (Tex. 1999). 

The Definition of Product


 Finestone argues that EIFS is not a component part of a product because a house is
not a product; therefore, argues Finestone, it owes no statutory duty to indemnify Fresh Coat. 
In response, Fresh Coat acknowledges it has not found any Texas court decision expressly
making this holding, but Fresh Coat directs us to cases that appear to implicitly acknowledge
EIFS is a product. See Pugh v. Gen. Terrazzo Supplies, Inc., 243 S.W.3d 84, 93-95 (Tex.
App.--Houston [1st Dist.] 2007, no pet.); R.H. Tamlyn & Sons, L.P. v. Scholl Forest Indus.,
Inc., 208 S.W.3d 85 (Tex. App.--Houston [14th Dist.] 2006, no pet.); Hixon v. Tyco Int'l,
Ltd., No. 01-04-01109-CV, 2006 WL 3095326, at *12 (Tex. App.--Houston [1st Dist.] Oct.
31, 2006, no pet.); Summit Custom Homes, Inc. v. Great Am. Lloyds Ins. Co., 202 S.W.3d
823 (Tex. App.--Dallas 2006, pet. filed), abrogated on other grounds by Lamar Homes, Inc.
v. Mid-Contintent Cas. Co., 242 S.W.3d 1, 16-20 (Tex. 2007); Lennar Corp. v. Great Am.
Ins. Co., 200 S.W.3d 651, 676-81 (Tex. App.--Houston [14th Dist.] 2006, pet. denied). See
contra Keck v. Dryvit Sys., Inc., 830 So.2d 1, 7 (Ala. 2002).

 Chapter 82 does not separately define "product." The meaning of the term is partially
explained, however, by the statutory definition of "seller." The statute defines "seller" as
follows: 

 (3)"Seller" means a person who is engaged in the business of distributing or
otherwise placing, for any commercial purpose, in the stream of commerce for
use or consumption a product or any component part thereof.


Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3) (Vernon 2005). From this definition, a
"product" is something distributed or otherwise placed, for commercial purpose, in the
stream of commerce for use or consumption. Fresh Coat and Finestone cite section 19 of the
Restatement (Third) of Torts. The Restatement defines a "product" as "tangible personal
property distributed commercially for use or consumption." Restatement (Third) of
Torts: Products Liability § 19 (1998). (3) We conclude the term "product" as used in
Chapter 82 includes tangible personal property placed, for commercial purpose, in the stream
of commerce for use. 

 We are not persuaded that use of a product in the construction of a house necessarily
results in the product's ceasing to be a product. Under Texas common law, PVC pipe
installed or incorporated into the plumbing system in an apartment complex has been treated
as a product, though the definition of product was not discussed. See generally Cupples
Coiled Pipe, Inc. v. Esco Supply Co., 591 S.W.2d 615, 616, 618 (Tex. Civ. App.--El Paso
1979, writ ref'd n.r.e.). Similarly, Texas products liability law has been applied to second-hand bricks used in building a house. Hovenden v. Tenbush, 529 S.W.2d 302, 305-06 (Tex.
Civ. App.--San Antonio 1975, no writ) (used bricks in building treated as defective product). 
The issue of the incorporation of a product into a house was not addressed in Hovenden
either, and the case does not involve the sale of the house, but the Court noted it was
undisputed "that defendant sold the bricks to plaintiff; that defendant was engaged in the
business of selling used bricks; and that the bricks reached plaintiff without substantial
change in the condition in which they were sold to plaintiff by defendant." Id. at 305; see
also generally Rayon v. Energy Specialties, Inc., 121 S.W.3d 7, 13-15 (Tex. App.--Fort
Worth 2002, no pet.) (firebox in house); Bennett v. Span Indus., Inc., 628 S.W.2d 470, 472
(Tex. App.--Texarkana 1981, writ ref. n.r.e.) (noting that had there been a defect in
component installed in a building, defect might have supported a legitimate claim of products
liability). 

 The record establishes that the EIFS is a synthetic stucco system made of component
parts manufactured by Finestone. The component parts are tangible personal property sold
and distributed commercially by Finestone to be assembled by an applicator into a finished
material and applied to a structure. The EIFS, as sold by Finestone, was tangible personal
property placed by Finestone for commercial purposes in the stream of commerce for use. 
Fresh Coat purchased the material from Finestone, assembled it, and applied it to the houses. 
Life Forms then sold the houses. We conclude the Finestone EIFS is a product within the
meaning of that term as used in the Texas Products Liability Act. 

 Product Placed in the Stream of Commerce By Seller


 Finestone argues Fresh Coat was providing a service, not selling a product. Finestone
characterizes the transaction as Life Forms's purchase of the "services of an applicator who
provided his own raw materials." The Restatement (Third) of Torts, section 19(b) states that
"[s]ervices, even when provided commercially, are not products." Restatement (Third)
of Torts: Products Liability § 19(b) (1998). The Restatement recognizes, however, that
a product seller may include one that also provides services. See Restatement (Third) of
Torts: Products Liability §§ 19, 20 & cmt. d (1998). Fresh Coat acknowledges it
provided a service, but contends it was also a product seller. See Tex. Civ. Prac. & Rem.
Code Ann. § 82.001(3). 

 Section 82.002(d) specifically provides that "[f]or purposes of this section, a
wholesale distributor or retail seller who completely or partially assembles a product in
accordance with the manufacturer's instructions shall be considered a seller." Tex. Civ.
Prac. & Rem. Code Ann. § 82.002(d) (Vernon 2005). Section 82.002(a) recognizes that a
seller may be independently culpable, and to that extent the manufacturer is not subject to the
requirement of indemnity. See id. 

 Chapter 82's definition of "seller" does not exclude a seller who is also a service
provider, nor does it require the seller to only sell the product. The requirement is that the
seller "distribut[e] or otherwise plac[e], for any commercial purpose," the product "in the
stream of commerce for use or consumption[.]" See Tex. Civ. Prac. & Rem. Code Ann. §
82.001(3). 

 Fresh Coat's scope of work under the Independent Contractor Agreement with Life
Forms called for Fresh Coat to provide "labor, services, and/or materials, equipment,
transportation or facilities necessary" to provide "synthetic stucco application and finish." 
Witnesses testified that Fresh Coat, as an EIFS applicator, was in the business of providing
both a product -- the EIFS components -- and a service -- the installation of the EIFS -- to
Life Forms and, ultimately, the homeowners.

 David Antoniono, Fresh Coat's owner, gave the following testimony on cross-examination:

 Q. In respect to the Life Forms and Fresh Coat's relationship, was Fresh
Coat being paid to provide both labor, material and installation services
in respect to putting up an EIFS wall?


 A. Fresh-Coat was hired as a contractor to provide EIFS services which
included purchasing the material, providing it to the job and purchasing
the labor and providing it to the job for a contracted fee.


 Q. Right. As I understand it -- and tell me if this is wrong. In respect to
Fresh-Coat, your company would go to like a Mr. Griesenbeck and buy
the materials that you needed for a specific job or it was delivered to
the job site, right?


 A. Yes.


 Q. And then you would have, through your company or subcontractors,
labor provided to take those components and install them together so
that at the end of the day, there was an EIFS -- an EIFS System, right?


 A. Yes, sir.


 Q. And then you would take those -- all of that together, the labor and the
material, and Life Forms would pay you one lump sum for all of those
-- for those combined services and materials, right?


 A. Yes. I would purchase the Finestone material for application on Life
Forms' homes.


 Q. What Life Forms did is they cut you a check and what they got was
your scope of work using EIFS.


 A. Yes. The EIFS scope of work.


Fresh Coat's job files for all of the houses involved in the lawsuit show that Fresh Coat
provided, and charged for, both the EIFS materials and the labor to install the component
materials on the homes. 

 Fresh Coat was engaged in the business of selling EIFS material for the use the
manufacturer intended. Fresh Coat mixed together the various materials (adhesive base coat,
mesh, and EPS board) to make a finished material and then applied it to a house. Fresh
Coat's application of the EIFS on Life Forms's houses, ultimately sold by Life Forms to the
homebuyers, is legally and factually sufficient evidence of Fresh Coat's placement of the
Finestone product in the stream of commerce for use. See id. We conclude Fresh Coat is a
seller as that term is defined in Chapter 82. 

Fresh Coat's Settlement Payment to Life Forms


 Finestone contends Fresh Coat's settlement payment to Life Forms does not satisfy
other requirements of Chapter 82. (4) Finestone asserts Life Forms did not make a claim for
personal injury, death, or property damage against Fresh Coat; Fresh Coat's contractual
payment did not arise out of a products liability action; and Fresh Coat cannot recover
indemnity from Finestone for Fresh Coat's payment to Life Forms. 

 Section 82.001(2) defines a "products liability action" as "any action against a
manufacturer or seller for recovery of damages arising out of personal injury, death, or
property damage allegedly caused by a defective product . . . ." Tex. Civ. Prac. & Rem.
Code Ann. § 82.001(2) (Vernon 2005). Here, numerous homeowners sued Life Forms,
Fresh Coat, Finestone, and others in a products liability lawsuit regarding the EIFS. Life
Forms filed a cross-claim against Fresh Coat on various causes of action, including
negligence, breach of contract, products liability, indemnity, breach of warranty, and DTPA. 
All of the claims related to the EIFS. Life Forms asserted that the EIFS was defective; the
EIFS sellers (including Fresh Coat) were negligent in performing their work and supplying
the materials; and Fresh Coat breached express and implied warranties relating to the goods
and services provided. Life Forms alleged that, as a result, the houses sustained damages and
Life Forms sustained damages. The damage claim included the costs Life Forms incurred
repairing houses containing EIFS, along with damages for the payments Life Forms made
to settle the homeowners' claims. The pleadings establish the homeowners and Life Forms
made claims against Fresh Coat for damages from a defective product. 

 Section 82.002(a) requires a manufacturer to indemnify a seller against loss arising
out of a products liability action, "except for any loss caused by the seller's negligence,
intentional misconduct, or other act or omission, such as negligently modifying or altering
the product, for which the seller is independently liable." Tex. Civ. Prac. & Rem. Code
Ann. § 82.002(a). (5) Finestone argues Fresh Coat falls within the exception. 

 In Meritor, 44 S.W.3d at 87, 90, the Supreme Court held that a "products liability
action" includes all direct allegations against the seller that relate to the plaintiff's injury,
including a plaintiff's unsuccessful negligence claim against the seller. The manufacturer
in Meritor relied on the "negligence" part of the exception, and argued that the allegations
of negligence against the seller were not part of the products liability action. Id. at 88. The
Supreme Court concluded that the negligence allegations were part of the "products liability
action," and that to fall within the statutory exception to liability, the manufacturer was
required to prove that the independent conduct of the indemnitee caused the indemnitee's
loss. Id. at 90-91.

 Finestone argues Fresh Coat is not entitled to recover from Finestone the $1.2 million
that Fresh Coat paid Life Forms, because the evidence establishes as a matter of law the
payment was based solely on a contract. The settlement and release agreement between Life
Forms and Fresh Coat recites that the agreement relates to claims and lawsuits made by
certain homeowners involving alleged construction defects in single family houses; that Life
Forms asserted various claims against Fresh Coat and sought recovery of attorney fees and
settlement payments Life Forms had already incurred or would incur to defend and settle the
homeowners' claims against Life Forms; and that "Life Forms' claims against Fresh Coat
were based upon, among other things, contractual, common law, and statutory indemnity
under Chapter 82 of the Texas Civil Practice and Remedies Code[.]" Fresh Coat's attorney
testified, however, that the $1.2 million was paid only because of a contractual indemnity
provision, and the payment was made regardless of whether Life Forms caused the loss. 
Finestone argues the contractual indemnity falls entirely within the statutory exception to
Finestone's duty to indemnify. 

 Finestone had the burden of proof to establish the applicability of the statutory
exception. To establish entitlement to judgment as a matter of law on this issue, Finestone
must demonstrate on appeal that the evidence conclusively established all vital facts in
support of the applicability of the statutory exception. See Dow Chem. Co., 46 S.W.3d at
241.

 Fresh Coat's attorney testified that Fresh Coat paid the settlement to Life Forms solely
as a result of Fresh Coat's independent contractual duties:

 Q. Your testimony is the $1,200,000 was paid to Life Forms to settle the
contractual indemnification provision in the contract between Life
Forms and Fresh Coat. Is that my understanding?


 A. [Fresh Coat's attorney]: Yes. . . .


 Q. My specific question was you are aware within the contract signed by
Fresh Coat with Life Forms there is a paragraph that is entitled
contractual indemnification.


 A. Right.


 Q. And under that contractual indemnification, are you saying that the $1.2
million all went to that?


 A. Uh-huh.


 Q. Okay.


 A. There was no other reason to give Life Forms any money to my
knowledge.


 Q. So, the entirety of your belief of where the exposure lays for Fresh Coat
as to the claims made by Life Forms stem through that provision.


 A. Yes. That provision. That's correct.

 . . . .

 Q. [Counsel] I appreciate your clearing up a few things. Let's put that contract
back up for a moment. As I understand what you have just testified to -- and
tell me if I am wrong -- based on what is called the contractual indemnification
provisions within the contract between Fresh Coat and Life Forms, you felt
that Life Forms's exposure and because of exposure that decision to settle with
Life Forms was based solely on that contract, right?


 A. It was solely on the contract. That's correct.


The attorney testified that Fresh Coat would still have had to pay Life Forms even if Life
Forms were negligent and unable to seek any indemnity under the Products Liability Act: 


 [I]t makes no difference whether or not Life Forms was negligent or not
negligent. I agreed by contract to indemnify them regardless if they were at
fault or not which means I can't use as an excuse you screwed something up
so, therefore, I shouldn't have to pay you. What this contract language says is
it doesn't make any difference if -- I'm not suggesting they did screw
something up. I am simply saying by virtue of this language it makes no
difference whether or not there is any factual support for a contention that they
screwed something up. I still have to pay them. And these things are quite
common in the construction industry, unfortunately, but -- I usually try to tell
my clients not -- to tell my client not to sign a contract that has them. Point is
it is there and we had that obligation. That's the reason why these payments
were made to Life Forms.


Fresh Coat's attorney's testimony conclusively established that the settlement payment Fresh
Coat made to Life Forms was based solely on Fresh Coat's independent liability under the
contract.

 The trial court's judgment requiring Finestone to pay Fresh Coat the $1.2 million
owed under the contract stretches the limits of Chapter 82 to include agreements to which
a product manufacturer is not a party, and to include independent liability the statute excludes
by exception. Finestone did not contractually agree, for example, to indemnify Life Forms
for Life Forms's own negligence; that is an obligation Fresh Coat assumed by contract. 
Reading the statute as Fresh Coat urges this Court to do would require a shifting of Fresh
Coat's contractual obligations -- contract terms bargained for and assumed by the contracting
parties in exchange for specific consideration -- to Finestone, a stranger to the contract. See
Gen. Am. Indem. Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661 (1960). We consider
the "plain and common meaning" of the words used in the statute. See City of San Antonio
v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). The provisions of Chapter 82 do not
provide a seller with a right of indemnity -- under the circumstances in the record presented
here -- against a product manufacturer for that seller's independent liability under a contract. 
See Tex. Civ. Prac. & Rem. Code § 82.002. We hold Finestone has no duty under Chapter
82 to indemnify Fresh Coat for Fresh Coat's payment to Life Forms. 

 Attorney Fees


 The jury awarded $726,642.23 as Fresh Coat's "[r]easonable attorneys' fees,
expenses, and costs in defending the products liability action and in pursuing its indemnity
claim against Finestone." (6) On appeal, Finestone argues Fresh Coat did not present evidence
segregating recoverable from non-recoverable attorney fees. 

 Fresh Coat had the burden to provide sufficient evidence to allow the trier of fact to
award fees. See All Seasons Window & Door Mfg., Inc. v. Red Dot Corp., 181 S.W.3d 490,
504 (Tex. App.--Texarkana 2005, no pet.). Chapter 82 authorizes recovery, as a "loss," of
attorney fees incurred in defending the products liability action, except -- as with other losses
-- those fees caused by the seller's act or omission for which the seller is "independently
liable." See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a) (Vernon 2005). Under this
section, Finestone was required to prove its contention that the statutory exception applied
to some of the fees. See generally Meritor, 44 S.W.3d at 91 (The plaintiff's pleadings invoke
the manufacturer's duty to indemnify; "to implicate section 82.002(a)'s exception . . . ," the
manufacturer must prove it.). Separately, the statute provides that reasonable attorney fees,
expenses, and damages incurred in pursuing the indemnity claim are also recoverable. Tex.
Civ. Prac. & Rem. Code Ann. § 82.002(g) (Vernon 2005).

 We have concluded Finestone established Fresh Coat's payment to Life Forms was
made solely as a result of a contract to which Finestone is not a party, and that Finestone is
not required to indemnify Fresh Coat for that loss. Similarly, the amount the jury awarded
in attorney fees, expenses, and costs incurred in defending the products liability lawsuit
possibly included attorney fees that ordinarily would fall within the statutory exception to
indemnity: that is, that portion of the fees attributable to the defense of the contract claim
made by Life Forms against Fresh Coat. Unlike the settlement payment to Life Forms,
however, non-recoverable attorney fees were not segregated from recoverable fees in the
jury's findings.

 The party who seeks to recover attorney fees is "required to segregate fees between
claims for which they are recoverable and claims for which they are not." Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006) (citing, among other cases, 
Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997)). The opposing party,
however, must preserve the contention that the claimant failed to segregate the fees sought. 
See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex. 1997). Furthermore, with respect
to attorney fees incurred in defending the product liability action, the statute imposes on the
manufacturer the burden not only to prove the statutory exception, but also to obtain a finding
of the amount of the portion of the loss excluded under the exception. See generally Meritor,
44 S.W.3d at 91 ("And while the manufacturer's duty to indemnify the seller is invoked by
the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is
established by a finding that the seller's independent conduct was a cause of the plaintiff's
injury."). The jury's finding based on the question that was submitted purported to exclude
any loss resulting from conduct for which Fresh Coat was independently liable, but did not
separately identify that portion of the fees, expenses, and costs incurred in the defense of the
contract claim. 

 Although Finestone made objections to the jury charge, Finestone failed to object to
the aggregate submission of Fresh Coat's attorney fees, expenses, and costs, and did not
present to the trial court a requested written question calling for the jury to determine those
fees, expenses, and costs incurred in defending the contract claim. See Tex. R. Civ. P. 272-274, 278; Tex. R. App. P. 33.1; see Bayer Corp. v. DX Terminals, Ltd., 214 S.W.3d 586, 602-03 (Tex. App.--Houston [14th Dist.] 2006, pet. denied); Morales v. Morales, 98 S.W.3d 343,
346 (Tex. App.-Corpus Christi 2003, pet. denied). All objections to the trial court's charge
must be presented outside the presence of the jury "in the presence of the court and opposing
counsel, before the charge is read to the jury. All objections not so presented shall be
considered as waived." Tex. R. Civ. P. 272. Requested written questions are to be presented
separate and apart from the objections. See Tex. R. Civ. P. 273. Further, "[a] party objecting
to a charge must point out distinctly the objectionable matter and the grounds of the
objection. Any complaint as to a question, definition, or instruction, on account of any
defect, omission, or fault in pleading, is waived unless specifically included in the
objections." Tex. R. Civ. P. 274. Finestone complained of the failure to segregate fees for
the first time on appeal. We hold Finestone's failure to object to the aggregate submission
of the attorney fees, expenses, and costs, as a "loss" arising out of the products liability suit,
and its failure to present the trial court with a requested written question regarding that
segregation, waived the statutory exception to the responsibility to indemnify Fresh Coat for
attorney fees, expenses, and costs. 

 Costs and Prejudgment interest


 Finestone separately complains of the award of costs with the attorney fees. (7) 
Finestone points out "court costs" are assessed by the court, not the jury. The statute defines
"loss" as including "court costs." See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(b). The
statute essentially provides that court costs assessed by the court may subsequently be
recovered from the manufacturer as part of the loss. Finestone did not object to the jury
question defining "loss" as including "court costs." The evidence presented on attorney fees,
expenses, and costs did not specifically identify an amount attributable to "court costs." The
record indicates court costs were previously assessed by the court in the prior judgments
disposing of the claims of the homeowners and Life Forms, but the record does not reflect
the amounts. 

 In addition to recovering those court costs which are included as part of the loss
arising out of the products liability action, the statute separately authorizes recovery of court
costs incurred by the seller to enforce the seller's right to indemnification. See id. §
82.002(g). The judgment appealed by Finestone awards Fresh Coat $726,642.23 in attorney
fees, and then, without specifying an amount, separately awards Fresh Coat "all courts costs"
that it incurred with respect to its pursuit of its indemnity claim against Finestone. 

 The court, not the jury, assessed court costs in the judgments in the record, and in the
absence of an objection by Finestone to the court charge, Finestone waived any error in the
wording of the jury question.

 Finestone also objects to the assessment of prejudgment interest on any award of
attorney fees and costs. With respect to the attorney fees and court costs sought in pursuing
the indemnity claim under section 82.002(g), those are not defined as part of the "loss" in
subsections (a) and (b). See id. § 82.02. The statute separately authorizes recovery of
reasonable attorney fees and costs incurred in pursuit of indemnity from the manufacturer.
See id. § 82.002(g). We agree prejudgment interest should not ordinarily be awarded on
those attorney fees and costs. See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315,
325 (Tex. 1994), abrogated on other grounds by Battaglia, v. Alexander, 177 S.W.3d 893,
909 (Tex. 2005); see also Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co., 223 S.W.3d
1, 25 (Tex. App. - El Paso 2005, pet. denied). They are not fairly considered a part of the
amount of the judgment.

 Here however, the fees incurred in pursuing the indemnity claim were included in the
question submitted to the jury as part of the loss arising from the products liability law suit. 
The fees were not segregated. This was error, but Finestone did not object to the court's jury
charge on this basis. Finestone cannot complain on appeal for the first time that the "loss"
question improperly combined all attorney fees.

 The attorney fees and costs in defending the products liability suit are defined,
however, as part of the "loss" in the statute. See § 82.002(a), (b). These fees and costs are
fairly considered a part of the damage amount that the judgment establishes Finestone must
reimburse Fresh Coat under the statute. Prejudgment interest is proper on the total
recoverable loss. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a), (b); see generally
Brainard v. Trinity Universal Ins. Co., 216 S.W.3d 809, 814 (Tex. 2006) (addressing
prejudgment interest in UIM context). 

 Conclusion


 We hold Finestone is not responsible under the Products Liability Act for the payment
Fresh Coat made to Life Forms as a result of Fresh Coat's contractual agreement with Life
Forms. Finestone's other issues are overruled. We modify the judgment to delete the portion
of the award and interest attributable to the contractual payment. Pursuant to the statute,
Fresh Coat is entitled to recover $1,763,328.46 as its loss, with prejudgment interest on that
amount. As modified, the trial court's judgment in favor of Fresh Coat is affirmed.



 AFFIRMED AS MODIFIED.

 

 DAVID GAULTNEY

 Justice 


Submitted on October 11, 2007

Opinion Delivered April 17, 2008


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. "Exterior Insulation and Finish System." 
2. Griesenbeck Architectural Products, Inc. also settled with Finestone on appeal.
3. Black's Law Dictionary defines "product" as "[s]omething that is distributed
commercially for use or consumption and that is usu[ally] (1) tangible personal property, (2)
the result of fabrication or processing, and (3) an item that has passed through a chain of
commercial distribution before ultimate use or consumption." Black's Law Dictionary
1245 (8th ed. 2004). 
4. In this issue, Finestone does not contest the payments Fresh Coat made directly to the
homeowners. 
5. Fresh Coat argues Finestone waived the applicability of the statutory exception to the
contract payment by failing to brief this argument. Finestone's original brief asserted broadly
that "Fresh Coat's payment to Life Forms is not recoverable from Finestone." Finestone also
asserted that there was "no evidence, or insufficient evidence, to support the jury's finding
that Fresh Coat incurred this loss as a result of a 'products liability action' as that term was
defined by the charge." Finestone argued Chapter 82 "does not provide an endless chain of
indemnity - one has to pay the person claiming personal injury, death, or property damage
to be entitled to Chapter 82's remedy." Finestone's reply brief specifically asserted the
statutory exception. At Fresh Coat's request, we allowed additional briefing after oral
argument to address the argument. The parties have fully briefed the sufficiency of the
evidence issue concerning the contract payment and the statutory exception. We do not find
a waiver of the issue. 
6. Finestone does not reference the award of appellate attorney fees, which was in
addition to the $726,642.23. In the absence of an issue attacking the award of appellate fees,
we do not address them. 
7. We address this issue, although it appears Finestone's brief more directly targets the
portion of the judgment in favor of Life Forms.