253 So.2d 837 (1971)
Roscoe J. PRIDGETT
v.
JACKSON IRON & METAL COMPANY, Inc. and Magna American Corporation.
No. 46325.
Supreme Court of Mississippi.
October 25, 1971.
*838 Charles A. Brewer, James B. Tucker, Jackson, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Butler, Snow, O'Mara, Stevens & Cannada, Lawrence J. Franck, Jackson, for appellees.
BRADY, Justice:
This is an appeal from the Circuit Court of the First Judicial District of Hinds County, Mississippi, wherein the trial court granted a directed verdict in favor of the appellees, Magna American Corporation and Jackson Iron & Metal Company, Inc. From that judgment this appeal is prosecuted by the appellant, Roscoe J. Pridgett.
Roscoe J. Pridgett, appellant, was an employee of Mosaic Tile Company of Hinds County. The testimony in the record shows that Mr. George Buford, the immediate supervisor of the appellant, had personally ordered from Jackson Iron & Metal Company, Inc., hereinafter referred to as Jackson Iron, some metal drums. In ordering the drums Mr. Buford specifically requested that the drums were not to be rusty and that they were to look good and have both ends in them. Mr. Buford testified that he was not concerned with what had previously been in these drums and that the drums which he received conformed to the requirements that he had specified to Mr. Clarence Earl Hawk of Jackson Iron.
The record shows that the appellant, Pridgett, was engaged in cutting a metal fifty-five gallon drum into two sections with an acetylene torch. When the torch flame penetrated the drum there was an explosion which caused personal injury to the appellant. The appellant, as an employee of Mosaic Tile Company, hereinafter designated as Mosaic, received proper compensation benefits under the Workmen's Compensation Act. Subsequently the appellant filed a declaration charging that Magna American Corporation, hereinafter called Magna, and Jackson Iron were liable for his personal injuries under the doctrine of strict liability in tort as adopted in Mississippi *839 and set forth in State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). The record and testimony prove that Magna is a manufacturer of small garden tools and that in the manufacture thereof they use paint, which is delivered to Magna in fifty-five gallon drums. As Magna empties the paint from the drums, it places them outside until twenty-five to a hundred drums have been accumulated. Magna also sells other scrap metal. Their practice was to then notify Jackson Iron, a known dealer in scrap metal, that the drums were available. Magna has never manufactured any drums, nor are they in the business of selling drums. Jackson Iron normally sells their scrap metal to steel mills for reprocessing. However, Jackson Iron does occasionally accommodate some of its customers by selling them scrap drums for use as industrial trash cans.
Mr. Hawk, who previously worked for Mosaic but who is now with Jackson Iron, testified that he was aware that Mr. Buford wanted drums to make them into trash receptacles and that Mosaic had used such drums when he had been employed by it. However, he stated that Mosaic had used a chisel in order to cut the ends out of the barrels.
The appellant's expert witnesses, Dr. John Legg and Mr. Logan, both testified that there was nothing unusual or "wrong with the drum" prior to the explosion. It is undisputed that the drums which Mr. Buford ordered met his requirements and specifications. The drum in question was not any different from the others prior to the explosion.
Appellant Pridgett testified that on the previous day he had cut in half six or seven drums with an acetylene torch. He testified that he was a welder and that he used the acetylene torch, but that prior thereto he had never cut drums with one. On the morning of the accident appellant had already cut one drum in half and had just started on the second when it exploded.
Mr. Buford testified that he had told all employees, including the appellant, that before they cut any of the drums they were to remove the bungs or plugs from them. Only two employees had been directed to cut the drums in half, one being Emanuel Lewis who had this task as a regular duty but who had quit that day because he had to take his daughter to the hospital. The appellant was then assigned this duty.
When the appellant rested his case, motions were made to exclude the evidence and to grant peremptory instructions and judgments were entered in favor of appellees. From these judgments this appeal is taken.
Appellant assigns three errors, the first of which is as follows: The lower court erred in refusing to allow the appellant to develop testimony as to instructions given appellant by his immediate supervisor, Mr. Buford, or anyone else as to the procedures and dangers present in cutting a steel drum with an acetylene torch.
The record clearly reveals that Mr. Buford specifically instructed all of his employees, including the appellant, that the bungs should be removed from the drums before cutting them. He stated that he knew from his own experience without being told that the drums must be ventilated before cutting. Mr. Buford further testified that the appellant was present and was so instructed by him; that this was a standing rule at Mosaic. Mr. Buford, when being interrogated as appellant's witness by appellant's attorney, testified that he had so instructed the employees because he knew that it was dangerous to cut a closed drum with an acetylene torch. Appellant did not plead surprise or make any complaint or showing that the witness was changing his testimony. Subsequently, however, appellant testified that he had not received the instructions. Objection was raised by counsel for Jackson Iron that the appellant was trying to impeach his own witness, but the court ruled that appellant would be permitted to testify on *840 this point. Thereupon objection was vigorously urged by counsel for Magna and at this point counsel for the appellant withdrew the question. Subsequently when appellant's counsel once more propounded the question, it was objected to by appellee's counsel and the court sustained the objection. Appellant wholly failed at this point to make a record as to what the offered testimony would have shown as is required under the law in this jurisdiction. Leggett v. Graham, 218 So.2d 892 (Miss. 1969); Casey v. Valentour, 218 So.2d 863 (Miss. 1969); Manning v. Hammond, 234 Miss. 299, 106 So.2d 51 (1958). Thus from the foregoing we hold there is no merit in appellant's first assignment of error.
The next error which appellant assigns is that the trial court erred in directing a verdict in favor of appellee Magna. Appellant contends that they had established a prima facie case of negligence under the theory of strict liability in tort against Magna. However, the record reveals that Magna is not in the business of manufacturing nor in the business of selling fifty-five gallon drums and that they could not fall under the classification of manufacturers. Their sole connection with the drums was that they had received paint in them. After they had used the paint they stored the drums outside until they had accumulated twenty-five to one hundred drums, which along with other scrap metal was sold to Jackson Iron. Jackson Iron was a reprocessor of scrap metal, whose chief function was to sell such reprocessed metal to steel mills.
Under the doctrine of strict liability in tort adopted and announced in State Stove Mfg. Co. v. Hodges, supra, this Court, speaking through Chief Justice Ethridge, stated that the strict liability in tort doctrine as it is applied in Mississippi is as follows:
Special Liability of Seller of Product for Physical Harm to User or Consumer 
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (189 So.2d at 118.)
Mr. Raymond Masopust, Magna's vice-president of manufacturing, testified that his records of sales of scrap metal revealed that no scrap metal was sold in 1968 to Jackson Iron. In fact, the last date of sale before the explosion was August 17, 1967, almost eleven months before the accident. For that reason, they should not be held liable for appellant's injuries under the doctrine of strict liability in tort as expressed in State Stove Mfg. Co. v. Hodges, supra.
Our research failed to disclose any cases in which the seller of a used product has been held liable for injuries resulting from the use thereof under the doctrine of strict liability in tort. This is true even though the products which were sold, such as a used automobile or a used beer keg regulator, were to be reused for the purpose for which they were originally manufactured. However, numerous cases abound in which the seller of a used product has been held liable for injuries because of defects therein, but only under the doctrine of warranty, express or implied, or under negligence. Witt Ice & Gas Co. v. Bedway, *841 72 Ariz. 152, 231 P.2d 952 (1951); Mulder v. Casho, 61 Cal.2d 633, 39 Cal. Rptr. 705, 394 P.2d 545 (1964); Brown v. Hall, 221 So.2d 454 (Fla. 1969); Foy v. Ed Taussig, Inc., 220 So.2d 229 (La. App., 1969); Barker v. Phoenix Ins. Co., 220 So.2d 720 (La. App., 1969).
We conclude that the appellant failed to meet its burden of proof and failed to establish a prima facie case against appellee Magna. The appellant did not prove that Magna owed the appellant any duty relating to the drum. Appellant did not prove that the drum was inherently dangerous for its intended use or that it was being put to its intended use. In State Stove Mfg. Co. v. Hodges, supra, the Court said:
* * * As was said in Morrow v. Caloric Appliance Corp., 372 S.W.2d 41, 55 (Mo. 1963), it should be "fit and reasonably safe for use by the `consumer' when used in the manner and for the purpose for which they are manufactured and sold * * *." (189 So.2d at 121.)
In Greeman v. Yuba Power Products, 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963), it is stated:
To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware made the Shopsmith unsafe for its intended use. (27 Cal. Rptr. at 701, 377 P.2d at 901, 13 A.L.R.3d at 1056.)
Magna sold the drum to a scrap iron dealer who primarily sold the same to steel mills for reprocessing. There is no proof that Magna knew or could have reasonably foreseen that the drum would be cut into trash containers by Jackson Iron or some other purchaser. We hold, therefore, that under the requirements set forth in the strict liability in tort doctrine the appellant failed to meet the burden of proof and the trial court did not err in granting the directed verdict to Magna.
The last error assigned by the appellant is that a prima facie case was established by appellant's evidence to show that the acts and conduct of the appellee, Jackson Iron, as a seller of the used product, rendered it liable to appellant under the theory of strict liability in tort. Appellant contends that the evidence is uncontradicted that the appellee Jackson Iron sold a steel drum to Mosaic and that the drum was in a defective and unreasonably dangerous condition at the time of the sale; that appellant suffered serious injury and damage as a result of the defective condition. Appellant furthermore asserts that appellee, Jackson Iron, was in the business of selling such drums and that at the time appellant used the drum it was in the same condition as when sold. Appellant contends moreover that proof of these facts establishes a cause of action in strict liability in tort as defined in Restatement of Torts (2d Ed.), section 402A, supra.
Jackson Iron denies that the appellant met the burden of proving that the drum was defective and that the appellee, Jackson Iron, is responsible for the dangerous condition which arose and because of which the appellant sustained the injuries of which he complains. Appellee contends that it is wholly insufficient for the appellant in a case such as this to prove merely that he used a certain product furnished him by the appellee and was injured. Such proof simply will not support recovery. Appellee asserts without exception that all of the authorities which have adopted the doctrine of strict liability in tort have recognized the necessity of the plaintiff establishing among other things that the product was defective. Section 402A, appellee points out, is specifically limited to "one who sells any product in a defective condition, unreasonably dangerous to the user or consumer * * *."
*842 Appellee urges that Restatement of Torts (2d Ed.) section 402A, comment g (1965) especially states the requirement as follows:
The burden of proof that the product was in a defective condition at the time it left the hands of the particular seller is upon the injured plaintiff; and unless the evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained. (Comment g at page 351.)
Appellee maintains that appellant wholly failed to meet this burden of proof; that the undisputed evidence clearly shows the product in the present case was not defective because it conformed exactly to the purchaser's stated requirements and expectations. This and the other drums were personally ordered by Mr. Buford as agent of the purchaser, Mosaic. Appellee Jackson Iron was engaged in the business as a scrap dealer. Mr. Buford knew that the drum in question had been previously used and was a second-hand drum which was exactly what he wanted. Mosaic was not interested in the least in what capacity the drum had been previously used. Mosaic was interested solely in obtaining drums that were not rusted out, had both ends in them, and were clean outside so that they could be used as trash receptacles. It made no difference whatsoever to Mosaic what may have been previously stored in the drums because Mosaic had a standing rule requiring its employees to remove all bungs or plugs on all drums before undertaking to cut them. Mr. Buford, supervisor of Mosaic, was fully aware of the precautions which must be taken before attempting to cut used metal drums with an acetylene torch and he specifically instructed the appellant and other employees of Mosaic to remove the bungs or plugs before cutting them, a procedure which would have rendered them safe for cutting. This procedure had been safely utilized by Mosaic's employees in the past without any explosions or injuries. However, in Walton v. Chrysler Motor Corp. and Chrysler Corp., 229 So.2d 568 (Miss. 1969), petition for rehearing denied January 12, 1970, this Court, speaking through Justice Rodgers, stated:
The issue to be determined here is whether or not this Court will extend the strict liability rule to include a case where the defect in the article sold did not cause the initial accident, but did, when combined with the force put in motion by the accident, add to, or become a part of the cause of injury to a human being, so as to subject manufacturer to liability.
* * * * * *
It has been said that in all negligence cases the plaintiff must establish: (1) that he was injured as a result of defendant's conduct (causal relationship); (2) that he was protected under some rule of law against this conduct (duty); (3) that defendant's conduct violated this duty; (4) plaintiff suffered loss (damages). Green, Foreseeability In Negligence Law, 61 Colum.L.Rev. 1401 (1961). The strict liability rule for products liability cases adopted by this Court eliminates the necessity to show negligence in the manufacture of the product where it is shown that the product left the hands of the manufacturer in a defective condition, but this rule does not eliminate the requirement that, even where there is a defect in the product, that there must be some duty owed to the plaintiff with regard to the defect, growing out of the intended normal use for which the product was manufactured. (229 So.2d at 570, 573.)
As is stated in State Stove Mfg. Co. v. Hodges, supra, "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (189 So.2d at 119.) Once again we find that this fifty-five gallon drum was not being used for the purpose for which it was manufactured or in the manner in which the manufacturer intended for it to be used.
*843 In summary, appellant urges that it met the burden of proof as to liability of appellee Jackson Iron under the doctrine of strict liability in tort because the drums were sold by Jackson Iron for the purpose of having them cut into halves with acetylene torches by Mosaic and made into trash receptacles. Appellant points out that this had been done in the past by Mosaic upon drums sold by appellee Jackson Iron. Appellant contends that insofar as the purpose for which it was sold is concerned, it was in a defective and unreasonably dangerous condition. This defective and dangerous condition is established by the fact that the drum was filled with highly explosive paint fumes. The bungs were sealed in the drums. Appellee Jackson Iron knew it would explode in such condition if cut with a torch. Appellant urges that Jackson Iron failed to alleviate, failed to warn as to attendant danger, failed to instruct as to procedures to be used in cutting the drum in the condition in which it was delivered, and failed to state that on the face of the drum it had been authorized for reuse as to explosives. Insofar as the words "authorized for reuse by Bureau of Explosives," which were written upon the drum, are concerned they are of no import here.
Appellant urges that in Restatement of Torts (2d Ed.) section 402A, comment h (1965), where the seller has reason to anticipate danger in the particular use of his product he may be required to give adequate warnings of the danger; that Restatement of Torts (2d Ed.) section 402A, comment j (1965) provides that the seller may be required to give directions or warnings on products as to the use in order to prevent the product from becoming unreasonably dangerous. Appellant urges that the duty to warn rests on the foreseeability of the seller, which, in turn, is based on the seller's notice or knowledge of danger. Appellant cites Tingey v. E.F. Houghton & Co., 30 Cal.2d 97, 179 P.2d 807 (1947), and Canifax v. Hercules Powder Co., 237 Cal. App.2d 44, 46 Cal. Rptr. 552 (1965).
Insofar as the defective and unreasonably dangerous condition of the drum is concerned, the record conclusively shows that Mr. Buford, supervisor of Mosaic, stated exactly in what condition the drums must be. No warning was necessary because Mr. Buford knew the danger in cutting a drum without first removing the bungs. He stated as a witness for appellant that he warned the appellant and the other employees that they must always remove the bungs before cutting the drums in half. Though appellant sought to impeach this witness, which was his witness, as to his warning to appellant, the question, upon objection, was withdrawn by counsel representing the appellant.
The record shows that the drum in question was one of three batches of drums recently sold to Mosaic Tile on Mr. Buford's order. It was not inherently defective and dangerous. The manner in which appellant sought to cut the drum, in violation of Buford's direct warning or instruction, made it dangerous. Emmanuel Lewis, another employee who regularly cut the drums in half when ordered to do so, never experienced any difficulty or danger. The record proves that danger in cutting the drums with a torch does not exist when the bungs are removed. The appellant was experienced in the use of acetylene torches. On the day preceding the accident, appellant had cut in half six or seven drums from the same batch without any incident. Actually on the morning of the accident he had cut in half one barrel or drum without incident. It is only when the bungs are not removed, against which Mr. Buford warned, and the fumes are not allowed to escape that danger arises when the drum is cut with a torch. Appellant's expert witness, Dr. Legg, testified that it was reasonable to conclude that if the drums had all been "treated exactly the same" and the drums which had been cut after the bungs had been removed did not explode, the drum in question, if the bungs had been removed, would not have exploded.
There was no duty on the part of Jackson Iron to give any warning, or alleviate, or *844 instruct appellant because Mr. Buford knew of the potential danger. He knew the bungs had to be removed before the cutting began and so instructed the appellant, Roscoe Pridgett, and the other employees. Jackson Iron could not possibly foresee that appellant, skilled in the use of acetylene torches, after being warned to remove the bungs before cutting the drums, would ignore or disregard the warnings and proceed to do so. Factually, Tingey v. E.F. Houghton & Co., and Canifax v. Hercules Powder Co., cited by appellant, wherein necessary warnings were not given, are distinguishable from the case at bar and are not controlling. The use of the drum by the appellant was in direct violation of his instructions and was abnormal insofar as the proper manner of cutting the drum is concerned. Under the plain meaning of Restatement of Torts (2d Ed.) section 402A, supra, we find no cases which extend the doctrine to include a seller of scrap iron, but even if strict liability could be so extended in contravention of the historical concept of implied warranty, it would not apply under the facts in the case at bar. The drum was not shown to be defective or unusually dangerous under the recognized meaning of Restatement of Torts (2d Ed.) section 402A, supra. The drum was exactly what appellant's superior ordered and was reasonably safe for the intended use of being converted safely into trash receptacles. The use of the drum by the appellant was abnormal and it was the appellant's failure to follow instructions which interveningly and independently caused the accident. The controlling facts in this case are not materially in dispute. The questions presented in the trial court were largely of law and we conclude that our reasoning and application of the doctrine of strict liability in tort controls in the case at bar as announced and applied in State Stove Mfg. Co. v. Hodges, supra; Hatcher v. American Motors Corp., 241 So.2d 147 (Miss. 1970); Coleman v. Ford Motor Co., 240 So.2d 607 (Miss. 1970); and Walton v. Chrysler Motors Corp., 229 So.2d 568 (Miss. 1969).
Just as we have declined to extend the doctrine of strict liability to where it would in substance make the seller an insurer where injury results from the use of the product sold which is not inherently defective or dangerous, so do we, under the facts of this case, decline to extend the doctrine to include this seller of scrap iron, who sold the used iron drum in question. The trial court correctly granted the directed verdicts for appellees. Therefore, this cause is affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH and SUGG, JJ., concur.