Janis Riley GARDNER, individually, and as next friend and on behalf of Christopher Gardner and Stephanie Lynn Gardner, Plaintiffs-Appellants,

v.

CHEVRON U.S.A., INC., a California corporation, Defendant-Appellee.

Nos. 80–1564, 80–1670.

United States Court of Appeals, Fifth Circuit.*
Unit A

May 5, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Nance, Caston & Nall, Richard Harrison, Sherman, Tex., for plaintiffs-appellants.

Baker & Botts, Michael Paul Graham, Houston, Tex., for defendant-appellee.

Before BROWN and GARZA, Circuit Judges, and BEER [**], District Judge.

BEER, District Judge:

This diversity suit arises under the Texas death and survival statutes for damages resulting from the death of Rudolph C. Gardner, who was killed as a result of a fire at a flowing oil well, owned and operated by Chevron U.S.A., Inc. The plaintiffs were Gardner's wife, two minor children and his parents. The case was tried before a jury which found the defendant Chevron not negligent in any respect which was a proximate cause of the death of Rudolph C. Gardner. A judgment was entered in favor of Chevron.

This appeal raises four issues. The first two concern evidentiary rulings admitting Chevron accident reports and excluding evidence of post-accident remedial repairs. Appellants also urge that the trial court erred in granting partial summary judgment as to the claims based on strict liability in tort. Finally, appellants claim the trial court erred in granting defendant's motion for a directed verdict on the issue of gross negligence.

On December 30, 1976, the deceased, Rudolph Gardner, was starting to "hot oil" a Chevron oil and gas well located northwest of Sherman, Texas. Although Gardner was going to hot oil the tubing of the well (the portion that runs from the wellhead into the reservoir), he connected the hot oil equipment to the one-inch swedge on the lower pressure well connections rather than into the top of the wellhead which would have been a higher pressure connection. In effect, Gardner failed to open the adjusta-

[**] District Judge of the Eastern District of Louisiana, sitting by designation.

ble choke and was pumping hot oil into a closed system. As a result, pressures were generated in excess of the breaking strengths of the schedule 40 steel pipe ("nipple"), causing it to break. From that point, the hot oil was sprayed back to the hot oil truck where it was ignited by the burners on the hot oil truck. The explosion and fire which resulted caused Gardner's death.

Appellant first contends the trial court erred in admitting certain reports purportedly made by Billy J. Briggs, the Chevron Production Foreman, because such reports were hearsay, and were not admissable as a business records exception under Federal Rules of Evidence, Rule 803(6). The trial court correctly concluded that the reports were made in the regular course of Chevron's business, and determined that they were sufficiently trustworthy to be admitted into evidence. Briggs' reports contained factual observations which he made and those which were reported to him by Chevron employees. In addition, they contain his opinions concerning the possible causes of the fire. The information contained in the reports was cumulative with other evidence presented during the trial. It is contended that the admission of the exhibits was error. In our view, the alleged error was rendered harmless since the jury never actually viewed the reports. In order to be absolutely sure of this factual conclusion, we directed the trial court to determine if the exhibits in question were, indeed, viewed by the jury. Pursuant to that direction, Judge Steger held a hearing on July 7, 1981, to determine whether defendant's exhibits 13, 14, 15 and 16 were furnished to the jury during the deliberations following the trial of this case. Based on the testimony of the six members of the jury, the Deputy Clerk and the U. S. Marshal, Judge Steger concluded that the exhibits were neither read nor shown to the jury during the trial, nor were these exhibits given to the jury in response to the note of the jury requesting pictures and charts. These findings by Judge Steger establish that the exhibits in question were neither shown nor read to the jury; thus, any error in admitting the exhibits was, clearly, harmless.

The trial court did not err in refusing plaintiffs' tendered evidence that Chevron's employee, Harry Zoda, replaced the broken pipe with a heavier grade pipe. That testimony was offered to impeach the testimony of B. J. Briggs, that he would use schedule 40 pipe if he were constructing such a new well. It was stipulated that where the subsequent repairs were made on the well in question, schedule 80 pipe was used. Appellants suggest there is an inconsistency in the testimony of Briggs and the tendered evidence of subsequent repair, so that the latter testimony became admissable as rebuttal evidence. Chevron never contested the feasibility of using a schedule 80 pipe. All of the witnesses conceded that schedule 80 pipe could have been used. In fact, Zoda testified that schedule 80 pipe would have been safer. Thus, appellants were able to present essentially the same evidence to the jury as that which the trial court declined to admit. The trial court properly balanced the public policy favoring the exclusion of evidence concerning subsequent repairs, as set forth in Federal Rules of Evidence, Rule 407, and the danger of unfair prejudice resulting from such evidence, as set forth in Federal Rules of Evidence, Rule 403, with the probative value of evidence of the repairs and determined that the prejudice substantially outweighed its value. The error, if any, was harmless, and the judgment of the jury was not, in our view, affected by the exclusion of this evidence.

The trial court did not err in granting Chevron's motion for partial summary judgment on the claim for relief based on strict liability in tort.

The doctrine of strict liability in tort, as set forth in § 402A of the Second Restatement of Torts does not apply here since the oil well was not a product and Chevron was not a seller engaged in the business of selling such products. Under Texas law, a premises occupier is liable for injuries sustained by business invitees

which result from the negligence of the occupier. *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627 (Tex., 1976). Strict liability does not apply to entities like Chevron, which had merely constructed an item when those entities were not engaged in the business of selling such items. *Freitas v. Twin City Fisherman's Cooperative Ass'n.*, 452 S.W.2d 931 (Tex.Civ.App., 1970). The Supreme Court of Texas stated the basic rule that strict liability applies to any person engaged in the business of selling products for use or consumption. Although it is not necessary that the defendant actually sell the product, the defendant must be engaged in the business of introducing the product into channels of commerce. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374 (Tex., 1978), rehearing denied Oct. 4, 1978.

■ Chevron did not manufacture, lease or sell nipples of the type that failed. Chevron did construct the well, but it was not sold, leased or placed in any way in the stream of commerce. Rather, Chevron designed the well and constructed it in the field of Sherman, Texas, for its own use. On that basis, the trial court properly determined that, as a matter of law, strict liability in tort did not apply.

Finally, the trial court did not err in granting the motion of Chevron for a directed verdict on the issue of gross negligence at the conclusion of the evidence.

■ The Texas standard governing gross negligence was recently reassessed in *Burk Realty Co. v. Walls*, 616 S.W.2d 911 (Tex., 1981), and it was held that the original definition of gross negligence as stated in *Missouri Pacific Railroad v. Shuford*, 72 Tex. 165, 10 S.W. 408 (1888), is the definition to be used in all such cases. *See, Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1373 (5th Cir. 1982). Under *Shuford*, gross negligence was defined as an entire want of care that would raise the belief that the act or omission complained of was the result of a conscious indifference to the welfare of a person. 72 Tex. at 170, 10 S.W. at 411. This original doctrine gave rise to the "some care" test that allowed a defendant

to overturn a jury verdict of gross negligence simply by showing that there was "some evidence" that did not support the jury's findings. *Burk Royalty*, 616 S.W.2d at 921. This test, however, was rejected in *Burk Royalty*, where the Court emphasized that the phrase "entire want of care" must be understood in the context of the entire definition of gross negligence. 616 S.W.2d at 922, *cited in Maxey*, 665 F.2d at 1373–74. Thus, the inquiry is no longer focused on the defendant's "entire want of care" but rather on whether an inference of conscious indifference is raised. 665 F.2d at 1374. In light of this more rigorous analysis, we cannot simply conclude that Chevron's care in constructing and maintaining their wells forecloses the possibility of a jury finding of gross negligence. However, the jury in the present action, in answer to Interrogatory No. 1, found that Chevron was not negligent in *any* of the respects as contended by Gardner. Because the jury did not find any failure to exercise ordinary care, there can be no question that they would not have found that Chevron was guilty of gross negligence. Under the rigorous tests outlined in *Burk Royalty*, the jury's finding of ordinary care necessarily precludes the inference of conscious indifference needed to establish gross negligence.

In summary, the trial court did not err in the rulings complained of, and, in any event, such errors were harmless and did not affect the substantial rights of the appellants.

Accordingly, the judgment of the trial court based upon the verdict of the jury is affirmed.

AFFIRMED.