692 P.2d 31

**Carlos ARENIVAS, Plaintiff-Appellant,**

v.

**CONTINENTAL OIL COMPANY, a/k/a Conoco Oil Company, Defendant-Appellee.**

**No. 6088.**

Court of Appeals of New Mexico.

Aug. 30, 1983.

Certiorari Quashed Dec. 11, 1984.

Tandy L. Hunt, Hunt & Currier, Roswell, for plaintiff-appellant.

Timothy J. Cusack, Cusack & Associates, Roswell, for defendant-appellee.

### ON MOTION FOR REHEARING

The motion for rehearing is granted concerning the issue regarding the use of the deposition at trial. In all other respects, it is denied.

### OPINION

HENDLEY, Judge.

Plaintiff sought to recover damages for injuries received in an accident while working on defendant's oil pumping unit. Plaintiff proceeded on theories of product liability and negligence—failure to provide a safe place to work. At the close of plaintiff's case, the trial court directed a verdict for defendant and plaintiff appeals.

We affirm.

Defendant operates the MCA field where the accident occurred. This oil field consists of 356 pumping units on approximately 13,000 acres. Defendant put the pumping units on the property pursuant to a unitization contract. Each working interest paid for and owned a proportionate interest of the equipment.

The pumping unit involved in the accident was a Lufkin pump. The MCA field had approximately 15 of these Lufkin

pumps which are "rear pivot" pumps. The rest of the units were "conventional" pumping units. The main difference, of importance to this case, is that on the Lufkin pump the counterweights and other machinery are attached to, or in the vicinity of, the wellhead at the front of the unit. The conventional pumps have the counterweight at the back of the unit, away from the head.

The Lufkin pump is manufactured with a protective screen in front. On this particular unit a pressure switch had been mounted behind the safety screen. It appears from the record that this switch had originally been mounted outside the screen and fencing around the unit, but was moved to keep cattle from interfering with production by bumping into the switch and shutting the unit off.

Plaintiff was employed as a hot oiler. On the well he was servicing, wax had built up in the piping that carried oil to the storage tanks. The wax had clogged the pipes and the pressure switch had closed down the system. Plaintiff's job was to pump hot oil from his truck through the pipes to melt the wax, and start the pump operating. To properly service the unit, it had to be operating.

The system would not operate because of the pressure switch. Plaintiff stepped through the protective cattle guard fencing and reached behind the safety screen to tap the switch, clear it, and start the system. The unit activated, the arms and counterweights began moving, and plaintiff's leg was caught between one of the arms and the cross frame member. The switch could have been cleared with the power off.

The unit had a sign on it which read, "CAUTION THIS WELL TIME CLOCK CONTROLLED AND OPERATES INTERMITTENTLY OPEN DISCONNECT SWITCH BEFORE WORKING ON UNIT." Opening the disconnect switch resulted in cutting power to the unit.

### Products Liability

The trial court was correct in entering a directed verdict on the products liability claim. Defendant was not a supplier of pumps. There is no evidence that defendant sold, leased, or in any way placed pumping units into the stream of commerce. Defendant was the operator and part owner.

New Mexico law does not require plaintiff to prove that defendant was a seller of the product to find strict liability under Restatement (Second) of Torts § 402A (1965). See Stang v. Hertz Corporation, 83 N.M. 730, 497 P.2d 732 (1972); Committee Comment to NMSA 1978, UJI Civ. 14.6 (Repl.Pamp.1980). One can be held strictly liable if he is in the business of putting a product on the market. In Stang, a bailor, in the business of leasing a product, is held to the same standard as a retailer of the product.

This is not the situation in the present case. Defendant is operator and part owner of the field, its minerals, and the equipment required to recover those minerals. There is no evidence that defendant sold or leased the units to the other owners. The evidence shows only that each working interest paid its proportionate share of recovery costs, including the price of the equipment. Each working interest owned a proportionate share of the equipment.

Gardner v. Chevron U.S.A., Inc., 675 F.2d 658 (5th Cir.1982), is a "hot oil" case. There, the hot oiler made a wrong connection and was pumping into a closed system. As a result the line broke, spraying oil on the hot oiler's truck's heaters and exploded, killing the hot oiler. The trial court granted summary judgment on the strict liability claim. In affirming the summary judgment, the court stated:

The doctrine of strict liability in tort, as set forth in § 402A of the Second Restatement of Torts does not apply here since the oil well was not a product and Chevron was not a seller engaged in the business of selling such products. * * * Strict liability does not apply to entities like Chevron, which had merely constructed an item when those entities were not engaged in the business of selling such items. Freitas v. Twin City

*Fisherman's Cooperative Ass'n.,* 452 S.W.2d 931 (Tex.Civ.App., 1970). The Supreme Court of Texas stated the basic rule that strict liability applies to any person engaged in the business of selling products for use or consumption. Although it is not necessary that the defendant actually sell the product, the defendant must be engaged in the business of introducing the product into channels of commerce. *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374 (Tex., 1978), rehearing denied Oct. 4, 1978.

Chevron did not manufacture, lease or sell nipples of the type that failed. Chevron did construct the well, but it was not sold, leased or placed in any way in the stream of commerce. Rather, Chevron designed the well and constructed it in the field of Sherman, Texas, for its own use. On that basis, the trial court properly determined that, as a matter of law, strict liability in tort did not apply.

■ The same reasoning applies in the instant case. Defendant did not in any way place the pumping unit in the stream of commerce. The trial court properly determined, as a matter of law, that strict liability in tort did not apply.

### Negligence—Failure to Provide a Safe Place to Work

Defendant and plaintiff agree that plaintiff was a business invitee and that defendant owed him the duty to exercise ordinary care to keep his property safe for use by an invitee. *See Mozert v. Noeding,* 76 N.M. 396, 415 P.2d 364 (1966).

In *Mozert* the court stated:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

■ However, a land owner owes no duty to warn an invitee of open and obvious dangers. *Proctor v. Waxler,* 84 N.M. 361, 503 P.2d 644 (1972); *McCrary v. Bill McCarty Const. Co., Inc.,* 92 N.M. 552, 591 P.2d 683 (Ct.App.1979); Restatement (Second) of Torts § 343A (1965). The owner is required to use reasonable care in providing a safe place in which his employees can work and may have a similar requirement in connection with employees of an independent contractor. *See Fresquez v. Southwestern Ind. Con. & Riggers, Inc.,* 89 N.M. 525, 554 P.2d 986 (Ct.App.1976).

■ Defendant did not breach any duty owed to plaintiff. Plaintiff was an experienced hot oiler and should have recognized the obvious danger of the pumping unit. Notwithstanding this, the sign on the unit warned of the danger. Defendant used reasonable care in providing a safe place to work. It breached no duty owed to plaintiff.

Plaintiff also raises an argument as to the trial court's ruling on punitive damages. In light of our affirming the directed verdict on both theories of plaintiff's case, it is not necessary for us to decide this issue.

### Use of Deposition

■ Plaintiff moved to use the deposition of a witness on the ground that the witness lived more than 100 miles from the place of trial. The trial court denied the motion. We agree.

Implicit in NMSA 1978, Civ.P.R. 32(A)(3) (Repl.Pamp.1980), is the condition that the witness be unavailable to testify in person. *See Niederstadt v. Ancho Rico Consolidated Mines,* 88 N.M. 48, 536 P.2d 1104 (Ct.App.1975). Here, there was no showing of unavailability. The trial court properly denied the use of the deposition.

The directed verdict against plaintiff is affirmed. Plaintiff is to pay costs of the appeal.

IT IS SO ORDERED.

WOOD and NEAL, JJ., concur.