533 So.2d 1112 (1988)
James D. HOLIFIELD
v.
PITTS SWABBING COMPANY, Getty Oil Company, Austin Oil, Inc., Frank Austin, and Mike Cheeseman.
No. 58094.
Supreme Court of Mississippi.
November 9, 1988.
John M. Deakle, Deakle & Deakle, Hattiesburg, William E. Phillips, Laurel, for appellant.
*1113 Brooke Ferris, Gibbes, Graves, Mullins, Bullock, & Ferris, Laurel, for appellee.
Before ROY NOBLE LEE, P.J., PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
The central issue in this appeal is the applicability of the doctrine of strict liability in tort to the construction of an oil well by an oil company for its own use. Getty Oil Company, the owner/operator of an oil well, is charged with selling a defective "product" with a wellhead equipment design defect into the stream of commerce, which "product" caused the injury to the plaintiff James D. Holifield. From the granting of a summary judgment by the Circuit Court of Jones County to Getty Oil Company[1], James D. Holifield appeals, alleging the following errors:
(1) Summary judgment was not proper because of the presence of material factual disputes.
(2) The trial court erred in holding that the doctrine of strict liability did not apply in this case.
(3) Summary judgment was improperly granted prior to the completion of discovery.
(4) The trial court erred in granting Getty's motion for summary judgment based on alleged negligence for failure to exercise reasonable care to protect foreseeable users from injury by the wellhead equipment.

I.
The facts here center around an oil well site known as the Matt-Eddius 32-4 Number One, Clark County, Mississippi. The oil well equipment was constructed when the well was owned and operated by Skelly Oil Company (Skelly). Skelly merged with the defendant Getty Oil Company, a Delaware Corporation, in 1977, with Getty assuming the liabilities of its predecessor, Skelly. In 1982 Getty Oil Company conveyed all its interest in this well to Austin Oil Company, Inc., a Mississippi Corporation. The sale was of all the equipment, including the wellhead and was sold without warranty as to fitness for use in its "as is" condition. The well was in fact not producing and was temporarily abandoned. Getty intended to permanently plug and abandon the well; however, Frank Austin, of Austin Oil Company, both also defendants, negotiated the purchase of the well for a stated price without competitive bids.
On January 9, 1983, James D. Holifield was employed by Emsco Wireline and was working at the well site in question. Another company, Pitts Swabbing Company, was also working at the site conducting a "swabbing operation" during which operation there was expelled from the well hydrogen sulfide gas (H[2]S gas). Holifield inhaled some of this poisonous gas and suffered permanent physical and emotional injury, for which this suit is brought.

II.

WAS SUMMARY JUDGMENT PROPER BECAUSE OF THE PRESENCE OF MATERIAL FACTUAL DISPUTES?
The first theory of recovery in this suit is on the basis of strict liability in tort. The plaintiff alleged that the wellhead equipment, known in the industry as the "Christmas tree", contained a design defect rendering the equipment unreasonably dangerous for its intended use. The valve of the wellhead was closed by use of a handle; however, the valve handle turned into a ladder placed close to the handle so as to prevent full closure. In order to completely close the valve, it was necessary to remove the handle and close the valve manually with thirteen revolutions of a crescent wrench. The plaintiff alleged that his injury was caused by the inability to close and seal the master valve due to the positioning of the ladder and handle. It is alleged that this positioning constituted a design defect present when the well was constructed by Skelly and for which Getty was strictly liable by its assumption of Skelly's liabilities. These facts are undisputed *1114 except as to the presence of a design defect.
Upon motion for summary judgment, affidavits in support and in opposition thereto, briefs of counsel and arguments, the trial court found that as a matter of law there was no genuine issue of any material fact and granted summary judgment in favor of Getty on the strict liability theory of recovery. Applicable to the disposition of this assignment is Rule 56(c), Miss.R. Civ.P. which provides as follows:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
The standard of review applied by this Court when analyzing the granting of a summary judgment motion under M.R.C.P. 56 is found in the case of Pearl River County v. Southeast Collection Agency, 459 So.2d 783 (Miss. 1984), in which this Court stated:
Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The power to grant summary judgment is not discretionary with the trial court and the above test must be met in all cases.
459 So.2d at 784-785.
In Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), this Court stated:
The argument that there exists no genuine triable issue of material fact is the functional equivalent of a request for a peremptory instruction. It merely occurs at an earlier stage in the life of a civil action. The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied. Compare generally, Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975); City of Jackson v. Locklar, 431 So.2d 475, 478-479 (Miss. 1983).
The legal argument upon which Getty's motion for summary judgment was based was that this action is not covered by products liability law. The seminal case in which this Court adopted Sec. 402A of Restatement of Torts, in which strict liability was enunciated, was the case of State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966). The Restatement section 402A reads:
1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to this property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
2. The rule stated in subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Ibid. at 118.
In Toliver v. General Motors Corp., 482 So.2d 213 (Miss. 1985), this Court explained that the rationale for the imposition of strict liability on manufacturers is two-fold:
[T]o shift the cost of injuries from the public to the manufacturer, Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 63, 27 Cal. Rptr. 697, 701, 377 P.2d 897, 901 (1962); and to assist the plaintiff in establishing what would otherwise be a near-impossible burden of proof. J.W. *1115 Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 826 (1973). The first part of the rationale represents a policy decision. As Justice Traynor stated in Greenman:

The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.
59 Cal.2d at 63, 27 Cal. Rptr. at 701, 377 P.2d at 901.
482 So.2d at 215, 216.
From the foregoing, it is apparent that the appropriate standard of responsibility of § 402A is applicable to manufacturers of a product who sell defective products if the seller is engaged in the business of selling the product.
The primary issues to be addressed are: (1) Is the oil well a "product" as contemplated by § 402A; and (2) was Getty a seller engaged in the business of selling such a "product."

(1) Is the oil well a "product?"
Holifield claims that courts have consistently held that oil wells and drilling equipment are products, citing 63 Am.Jur.2d, Products Liability, § 755 (1985), and Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558 (1962).
Getty contends that the well was at best used equipment which is not subject to strict tort liability for injuries arising from its use, citing Pridgett v. Jackson Iron & Metal, 253 So.2d 837, 840 (Miss. 1971).
This Court finds persuasive the analysis used in Gardner v. Chevron, U.S.A., Inc., 675 F.2d 658 (5th Cir.1982), in which the survivors of Rudolph Gardner brought an action against Chevron in strict liability in tort. Gardner was killed as a result of a fire which started when a steel pipe broke spraying hot oil on a truck causing an explosion. The flowing oil well was owned and operated by Chevron. The Fifth Circuit, applying Texas law, affirmed a summary judgment in favor of Chevron, holding that "the oil well was not a product and Chevron was not a seller engaged in the business of selling such products." Ibid. at 660. See also Arenivas v. Continental Oil Co., 102 N.M. 106, 692 P.2d 31 (App. 1983); Dunn v. Penrod Drilling Co., 660 F. Supp. 757 (S.D.Tex. 1987).
This Court holds that the wellhead is not a product as contemplated by § 402A.

(2) Was Getty a seller engaged in the business of selling the "product"?
In Pridgett v. Jackson Iron and Metal Co., 253 So.2d 837 (Miss. 1971), a defendant, Magna America Corp., was granted a directed verdict based on a finding that the plaintiff had failed to establish a prima facie case under § 402A. This Court found that Magna was not in the business of selling fifty-five gallon drums, even though Magna regularly sold empty paint drums to a scrap iron dealer, Jackson Iron & Metal Co., 253 So.2d at 840.
In Alley v. Praschak Machine Co., 366 So.2d 661 (Miss. 1979), this Court, citing Pridgett, stated that a seller who is not in the business of selling the defective product but makes an isolated sale, is not subject to the strict liability standard of § 402A as adopted in State Stove Mfg. Co.
Holifield claims that Getty's policy of selling wells by competitive bidding should be viewed as evidence that Getty is in the business of marketing oil wells. He also states that Getty's sale of petroleum products should be interpreted as indicating that Getty is in the business of selling wells.
This Court is not persuaded by Holifield's argument, but finds Pridgett, supra, controlling.
The Gardner Court stated:
The doctrine of strict liability in tort, as set forth in § 402A of the Second Restatement of Torts does not apply here since the oil well was not a product and Chevron was not a seller engaged in the business of selling such products. * * * Strict liability does not apply to entities like Chevron, which had merely constructed an item when those entities were not engaged in the business of selling such items. Frietas v. Twin City *1116 Fisherman's Cooperative Ass'n., 452 S.W.2d 931 (Tex.Civ.App., 1970). The Supreme Court of Texas stated the basic rule that strict liability applies to any person engaged in the business of selling products for use or consumption. Although it is not necessary that the defendant actually sell the product, the defendant must be engaged in the business of introducing the product into channels of commerce. Armstrong Rubber Co. v. Urquidez, 570 S.W.2d 374 (Tex., 1978), rehearing denied Oct. 4, 1978.
Chevron did not manufacture, lease or sell nipples of the type that failed. Chevron did construct the well, but it was not sold, leased or placed in any way in the stream of commerce. Rather, Chevron designed the well and constructed it in the field of Sherman, Texas, for its own use. On that basis, the trial court properly determined that, as a matter of law, strict liability in tort did not apply.
The record reflects the following uncontradicted facts to exist:
The wellhead equipment was constructed by Getty's predecessor, Skelly Oil Company, for its own use. The well, including the wellhead equipment, was sold by Getty Oil Company to Austin Oil Company. The record discloses no evidence that any of the individual components of the wellhead equipment, consisting of the master valve, the master valve handle or the access vertical ladder, were defective. On the contrary, testimony was produced which affirmatively showed that all of such components were working properly when the sale was made to Austin. The alleged design defect consisted solely of appellant's claim that the vertical ladder used for access to the master valve on the wellhead equipment was positioned so close to the valve handle that it interfered with the turning operation. This led to the practice of employees to remove the valve handle and apply a crescent wrench in closing the master valve. There is no proof or evidence in the record showing that the master valve could not be properly closed by using the crescent wrench. There is no proof in the record to show that Getty was "engaged in the business of selling oil wells" but, instead, was regularly engaged in the business of exploration, drilling and production of oil and gas, and the sale of the well to Austin Oil, Inc., in 1982 was an isolated transaction.
This Court holds that the foregoing factual circumstances do not warrant the imposition of strict liability in tort.

III.

WAS THE TRIAL COURT IN ERROR IN GRANTING SUMMARY JUDGMENT ON THE THEORY OF NEGLIGENCE?
The complaint of Holifield alleged an alternative ground of recovery based upon negligence. The negligence charged a failure to correct a defective valve and a failure to warn a known defect in the equipment. Yet the affidavits, interrogatories, and admissions fail to establish in the record of a defective valve, but on the contrary a valve in good condition and without defect. There was no evidence that by use of the crescent wrench the valve could not be closed. Without any defect, Getty had no duty to warn.
Absent a showing of a genuine issue of a material fact concerning the alleged failure to correct an alleged defect or an alleged failure to warn, the granting of summary judgment on the ground of negligence of Getty was properly granted. M.R.C.P. 56, Brown, supra.

IV.

DID THE COURT ERR IN GRANTING SUMMARY JUDGMENT PRIOR TO THE COMPLETION OF DISCOVERY?
The Court first addresses the sequence of pleadings and the discovery performed as shown in this record. The original complaint was filed on July 3, 1985. Before Getty's answer was due, and pursuant to agreed order Holifield filed his first amended complaint on September 24, 1985. Both complaints were founded solely on the theory of negligence. A second amended complaint was filed on October 17, 1985. Holifield charged Getty with negligence and alleged strict liability in tort. Getty's answer *1117 was filed on November 6, 1985, followed by its motion for summary judgment filed on December 24, 1985. The motion was noticed for hearing at the pre-trial conference scheduled for January 16, 1986. Holifield moved for a protective order on the grounds that one defendant, Mike Cheeseman, was not in court and discovery was incomplete. At the January 16, 1986, pre-trial conference the case was continued. The missing defendant answered on January 13, 1986. The appellant's deposition was taken on January 17, 1986, and the depositions of defendants, Mike Cheeseman, Frank Austin, Austin Oil, Inc., Getty Oil Company (Walter Cornelius), and Pitts Swabbing Company (Billy Joe Pitts, Jr. and Chester Ray Russell, Jr.) were taken on February 28, 1986.
The pre-trial conference for the March 1986 Term of Court was set for March 18, 1986. A scheduling order was entered, and the case was again continued. The order provided that appellant's request for discovery, including depositions, interrogatories and production, was to be filed no later than sixty (60) days from March 18, 1986. The case was again continued.
Getty moved for summary judgment and a motion hearing was set for May 23, 1986, by agreement. Additional affidavits in support of the motion were filed by Getty on May 13, 1986.
On May 21, 1986, appellant filed his motion to amend the scheduling order, designation of expert witnesses, and response to the motion for summary judgment. The Court overruled Holifield's earlier-filed motion for a protective order and overruled his motion to amend the scheduling order. These rulings were made from the bench and orders were entered on May 26, 1986, and again on July 22, 1986. The Court also sustained Getty's motion for summary judgment, and a final judgment as to Getty was entered on August 27, 1986.
From the time the original complaint was filed until the entry of the final judgment as to Getty, the only discovery filed or initiated by Holifield were the depositions taken on February 28, 1986, pursuant to notice. Getty (and all other defendants) fully complied with Holifield's request for production in connection with the depositions.
Holifield states that summary judgment should not be granted before discovery has been completed, citing Alabama Farm Bureau Mutual Cas. Co. v. American Fidelity Life Insurance Co., 606 F.2d 602, 609 (5th Cir.1979); Comment to Rule 56, Miss. R.Civ.P., and 10 C. Wright, A. Miller, Federal Practice and Procedure, Civil, § 2711-2742 (1973). However, the Alabama Farm Bureau Mutual Cas. Co. decision held that summary judgment should not ordinarily be granted before discovery was completed, but acknowledged that such might be available in a proper case. Alabama, at 609. Holifield states that numerous factual issues were disputed in regard to defects and responsibilities of the various defendants for the defects he claims but his motions for further discovery were precipitously denied.
Holifield cites Miss.R.Civ.P. 56(f) and § 11-7-123, Miss. Code Ann. (1972), for the proposition that the court is required to grant a continuance and not grant a motion for summary judgment prematurely.
On the other hand, Getty, contends that Holifield had ample opportunity to exercise his discovery rights, but the only discovery filed were the depositions of February 28, 1986. Getty further states that Holifield failed to comply with the procedure required by Rule 56(f) in making an application for continuance. In a recent case Marx v. Truck Renting & Leasing Ass'n., 520 So.2d 1333 (Miss. 1987), this same issue was considered. This Court stated that:
The party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." United States v. Little Al, 712 F.2d 133, 135 (5th Cir.1983), [citing Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980)]. *1118 The party opposing the motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts particularly where there was ample time and opportunity for discovery. Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir.1980); see also, Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1189 (5th Cir.1978) [failure to conduct discovery where case was on docket for six months bars application of 56(f)]. This is so because Rule 56(f) is not designed to protect the litigants who are lazy or dilatory and normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the exclusive possession of the other party. 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2741 at 549. Finally, the determination as to the adequacies of the non-movant's Rule 56(f) affidavits and the decision to grant a continuance or order further discovery rests within the sound discretion of the trial judge and will not be reversed unless his decision can be characterized as an abuse of discretion. Fontenot v. Upjohn Co., 780 F.2d 1190, 1193 (5th Cir.1986).
520 So.2d at 1344.
In this case, Holifield had ample time and opportunity to file discovery requests and to depose his own experts. In the Court's opinion, this assignment is without merit.
This Court finds that the trial court was correct in granting Getty's motion for summary judgment and the ruling is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents as to Part IV with no written opinion.
NOTES
[1] Getty Oil Company merged with Texaco, Inc. in January, 1984. See Texaco v. Pennzoil, 729 S.W.2d 768 (Tex. App.  Houston [1st Dist.] 1987).